UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | | |
|---|---|---|
| **CORA L. BRADFORD** | * | **CIVIL ACTION NO.  18-1376** |
| **VERSUS** | * | **JUDGE TERRY A. DOUGHTY** |
| **JACKSON PARISH POLICY JURY d/b/a JACKSON PARISH HOSPITAL, ET AL.** | * | **MAG. JUDGE KAREN L. HAYES** |

## REPORT AND RECOMMENDATION

Before the undersigned Magistrate Judge, on reference from the District Court, are the following motions:  1) a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted [doc. # 13] filed by defendant, Jackson Parish Hospital Service District No. 1 d/b/a Jackson Parish Hospital ( "JPHSD"); 2) a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted [doc. # 14] filed by defendant, Inquiseek, L.L.C. ("Inquiseek"); and 3) a motion for leave to amend complaint [doc. # 28] filed by plaintiff Cora Bradford.  For reasons explained below, it is recommended that Inquiseek's motion be GRANTED, and that the JPHSD's motion be GRANTED-IN-PART and DENIED-IN-PART.   It is further ordered that plaintiff's motion for leave to amend is GRANTED.

### Background

On October 23, 2018, Cora Bradford filed the instant complaint against her former employer, the Jackson Parish Police Jury d/b/a Jackson Parish Hospital, as well as Inquiseek – a consulting firm hired by Bradford's former employer to evaluate the hospital's accounting functions.  (Compl.).  Bradford asserted race-based claims for wrongful termination, disparate treatment, and wage disparity under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e,

*et seq*.; 42 U.S.C. §§ 1981, 1983; the Equal Pay Act, 29 U.S.C. 201, et seq.; and the Louisiana Employment Discrimination Law ("LEDL"), La. R.S. § 23:332. *Id*. She also asserted state tort law claims against Inquiseek stemming from its agent's, Jeff Harper's verbal abuse and threats that purportedly caused Bradford to lose her job. *Id*. Bradford seeks lost wage and benefits, plus liquidated, exemplary, and punitive damages, attorney's fees, interest, and costs. *Id*. She also prays for a judgment enjoining defendants from engaging in the alleged discriminatory activities, as well as requiring them to take affirmative steps to redress their discriminatory practices.

On November 12, 2018, the Jackson Parish Police Jury and the JPHSD filed an answer to the complaint in which they clarified that they had been improperly named in the complaint as a single entity (the "Jackson Parish Police Jury d/b/a Jackson Parish Hospital"). (Answer [doc. # 5]). In so doing, they effectively substituted themselves as defendants in lieu of Jackson Parish Police Jury d/b/a Jackson Parish Hospital. On November 13, 2018, Inquiseek filed its answer. [doc. # 6].

On January 15, 2019, each of the three defendants filed a dispositive motion. The Police Jury filed a motion for summary judgment seeking dismissal on the grounds that it neither was Bradford's employer, nor involved in the challenged conduct that formed the basis for this suit. [doc. # 11]. Plaintiff filed a statement(s) stating that she did not oppose the motion. [doc. #s 22 & 23]. Accordingly, the Court granted the Police Jury's motion and dismissed it from the case. [doc. # 24].

Inquiseek filed the instant Rule 12(b)(6) motion to dismiss plaintiff's claims for tortious interference with contract, intentional infliction of emotional distress, and for punitive damages. [doc. # 14]. Plaintiff filed her opposition on February 1, 2019. [doc. # 25]. Inquiseek filed its reply on February 7, 2019. [doc. # 30].

The JPHSD filed the instant Rule 12(b)(6) motion to dismiss plaintiff's claims under 29 U.S.C. §§ 201 & 206 (the Equal Pay Act), 42 U.S.C. §§ 1981 and 1983, and for punitive damages. Plaintiff did not file an opposition to the motion, and the time to do so has lapsed. (Notice of Motion Setting [doc. # 17]). Thus, the motion is unopposed. *Id*.

On February 6, 2019, however, plaintiff filed the instant motion for leave to amend complaint to add claims for gender-based discrimination and wage disparity. On February 12, 2019, the JPHSD filed an opposition to the motion, wherein it argued that, aside from a potential claim of gender discrimination under the Equal Pay Act, the proposed amendment was futile because the new claims were time-barred. Plaintiff did not file a reply brief, and the time to do so has lapsed. (Notice of Motion Setting; [doc. # 29]). Thus, the matter is ripe.

## Discussion

**I.     Leave to Amend**

Leave to amend shall be "freely"granted "when justice so requires." Fed.R.Civ.P. 15(a)(2). "'Whether leave to amend should be granted is entrusted to the sound discretion of the district court . . .'" *Quintanilla v. Texas Television, Inc.*, 139 F.3d 494, 499 (5th Cir.1998) (quoted source omitted). Yet, "[i]n the context of motions to amend pleadings, 'discretion' may be misleading, because FED. R. CIV. P. 15(a) 'evinces a bias in favor of granting leave to amend.'" *Martin's Herend Imports v. Diamond & Gem Trading United States of America Co.*, 195 F.3d 765, 770 (5th Cir. 1999) (quoting *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 597 (5th Cir. Nov. 1981)). A district court must have a "substantial reason" to deny a request for leave to amend. *Lyn-Lea Travel Corp. v. American Airlines, Inc.*, 283 F.3d 282, 286 (5th Cir. 2002) (citation omitted).

In deciding whether to grant a party leave to amend, the court considers the following

factors: 1) undue delay, 2) bad faith or dilatory motive, 3) repeated failure to cure deficiencies by previous amendments, 4) undue prejudice to the opposing party, and 5) futility of the amendment. *Rosenzweig v. Azurix Corp.,* 332 F.3d 854, 864 (5th Cir. 2003) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). Absent any of these factors, leave should be granted. *Smith v. EMC Corp.*, 393 F.3d 590, 595 (5th Cir. 2004) (citing, *Foman*, 371 U.S. at 182).

The JPHSD opposes the proposed amendment on the basis that it is futile. In the Rule 15 context, an amendment is futile if it "would fail to state a claim for relief upon which relief could be granted." *Stripling v. Jordan Production Co.*, LLC, 234 F.3d 863, 873 (5th Cir. 2000). However, whether plaintiff's amended pleading succeeds in restating her cause of action is a contested issue that remains inextricably intertwined with the merits of the pending motion(s) to dismiss the original complaint. Moreover, when, as here, plaintiff amends her complaint while a motion to dismiss is pending, and defendant(s) maintains that the defects raised in the original motion are not cured by the new pleading, then the court may consider the motion to dismiss as being addressed to the amended pleading.

> Indeed,
>
> defendants should not be required to file a new motion to dismiss simply because an amended pleading was introduced while their motion was pending. Rather, [i]f some of the defects raised in the original motion remain in the new pleading, the court simply may consider the motion as being addressed to the amended pleading.

*Rountree v. Dyson*, 892 F.3d 681, 683 (5th Cir.), *cert. denied*, ___ U.S. ___, 139 S.Ct. 595 (2018) (citations omitted).

Furthermore,

> [u]nder Rule 12(b)(6), a plaintiff with an arguable claim is ordinarily accorded notice of a pending motion to dismiss for failure to state a claim and *an opportunity to amend the complaint before the motion is ruled upon*. These procedures alert h[er] to the legal theory underlying the defendant's challenge, and enable h[er] meaningfully to respond by opposing the motion to dismiss on legal

> grounds or by clarifying h[er] factual allegations so as to conform with the requirements of a valid legal cause of action.

*Neitzke v. Williams*, 490 U.S. 319, 329-30, 109 S. Ct. 1827, 1834 (1989) (emphasis added).

Here, the JPHSD's motion to dismiss was plaintiff's first specific notice that her complaint failed to state a claim for gender-based discrimination and wage disparity. While JPHSD argues that the proposed amendment is untimely as to the discrimination claims, it does not contend that it is untimely for purposes of asserting a claim under the Equal Pay Act. Accordingly, the court will permit the amendment, and fold the JPHSD's arguments regarding futility into the court's discussion of the already pending motion(s) to dismiss.

**II.     Failure to State a Claim Upon Which Relief Can be Granted**

   a)     12(b)(6) Principles

The Federal Rules of Civil Procedure sanction dismissal where the plaintiff fails "to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). A pleading states a claim for relief when, *inter alia*, it contains a "short and plain statement . . . showing that the pleader is entitled to relief . . ." Fed.R.Civ.P. 8(a)(2).

To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955 (2007)). A claim is facially plausible when it contains sufficient factual content for the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. *Plausibility* does not equate to *possibility* or *probability*; it lies somewhere in between. *See Iqbal, supra*. Plausibility simply calls for enough factual allegations to raise a reasonable expectation that discovery will reveal evidence to support the elements of the claim. *See Twombly*, 550 U.S. at 556, 127 S.Ct. at 1965. Assessing whether a complaint states a

plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal, supra* (citation omitted). A well-pleaded complaint may proceed even if it strikes the court that actual proof of the asserted facts is improbable, and that recovery is unlikely. *Twombly,*

Although the court must accept as true all factual allegations set forth in the complaint, the same presumption does not extend to legal conclusions. *Iqbal, supra*. A pleading comprised of "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" does not satisfy Rule 8. *Id*. Moreover, courts are compelled to dismiss claims grounded upon invalid legal theories even though they might otherwise be well-pleaded. *Neitzke v. Williams*, 490 U.S. 319, 109 S.Ct. 1827 (1989).

Nevertheless, "[t]he notice pleading requirements of Federal Rule of Civil Procedure 8 and case law do not require an inordinate amount of detail or precision." *Gilbert v. Outback Steakhouse of Florida Inc.*, 295 Fed. Appx. 710, 713 (5th Cir. 2008) (citations and internal quotation marks omitted). Further, "a complaint need not pin plaintiff's claim for relief to a precise legal theory. Rule 8(a)(2) of the Federal Rules of Civil Procedure generally requires only a plausible 'short and plain' statement of the plaintiff's claim, not an exposition of [her] legal argument." *Skinner v. Switzer*, 562 U. S. 521, 131 S. Ct. 1289, 1296 (2011). Indeed, "[c]ourts must focus on the substance of the relief sought and the allegations pleaded, not on the label used." *Gearlds v. Entergy Servs., Inc.*, 709 F.3d 448, 452 (5th Cir. 2013) (citations omitted). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 127 S. Ct. 2197, 2200 (2007) (quoting *Bell Atl.*, 127 S. Ct. at 1958). In the context of employment discrimination claims, "the ordinary rules for assessing the sufficiency of a complaint apply," and a plaintiff

need not establish a prima facie case of employment discrimination in her complaint. *Swierkiewicz v. Sorema*, 534 U.S. 506, 511, 122 S.Ct. 992, 997 (2002).

When considering a motion to dismiss, courts generally are limited to the complaint and its proper attachments. *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) (citation omitted). However, courts may rely upon "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice" – including public records. *Dorsey, supra*; *Norris v. Hearst Trust*, 500 F.3d 454, 461 n9 (5th Cir. 2007) (citation omitted) (proper to take judicial notice of matters of public record). Furthermore, "[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [her] claim." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-499 (5th Cir. 2000) (citations and internal quotation marks omitted).

  b) <u>The JPHSD's Motion to Dismiss</u>

In its original motion, the JPHSD argued that plaintiff failed to state a claim for relief under the Equal Pay Act, 42 U.S.C. § 1981, 42 U.S.C. § 1983, or for punitive damages. In response to plaintiff's amended complaint, the JPHSD asserted that plaintiff failed to state a claim for gender discrimination: 1) under Title VII because she did not exhaust administrative remedies; 2) under the LEDL because the claim is untimely, and in any event, she failed to provide requisite pre-suit notice of the claim; and 3) under §§ 1981 and 1983 because § 1981 only applies to racial discrimination. The court will address each challenged claim, in turn.

    1) *Equal Pay Act*

To establish a prima facie case under the Equal Pay Act, plaintiff must show that: "1. her employer is subject to the Act; 2. she performed work in a position requiring equal skill, effort, and responsibility under similar working conditions; and 3. she was paid less than the employee

of the opposite sex providing the basis of comparison." *Chance v. Rice Univ.*, 984 F.2d 151, 153 (5th Cir.1993).

The JPHSD sought dismissal of plaintiff's Equal Pay Act claim because she originally only alleged pay disparity on the basis of race, not gender. However, plaintiff cured this omission in her amended complaint. *See* Amend. Compl., ¶¶ 6, 11, 17, & 19.[1] Accordingly, the court finds that plaintiff's amended complaint states a claim for relief under the Equal Pay Act.

    2)    *Gender Discrimination under Title VII and the LEDL*

As stated earlier, plaintiff's amended complaint added claims for gender-based discrimination (including wage disparity) under Title VII. (Amend. Compl., ¶¶ 17-18). The JPHSD, however, contends that the claim is futile/subject to dismissal because plaintiff failed to exhaust administrative remedies before bringing the claim in federal court.

It is axiomatic that employment discrimination plaintiffs must exhaust administrative remedies before pursuing claims in federal court. *Taylor v. Books A Million, Inc*. 296 F.3d 376, 378 -379 (5th Cir. 2002); *Dao v. Auchan Hypermarket,* 96 F.3d 787, 788-89 (5th Cir.1996). A Title VII plaintiff exhausts administrative remedies when she files a timely charge with the EEOC and receives a statutory notice of right to sue. *Id*. In a "deferral state" such as Louisiana,[2]

---

[1] In its opposition to plaintiff's motion to amend, the JPHSD urged the court to "exercise its discretion" to deny plaintiff's motion to amend to assert an Equal Pay Act claim because plaintiff failed to oppose the JPHSD's motion to dismiss. While it certainly would have been preferable for plaintiff to file a formal opposition to defendant's motion to dismiss her Equal Pay Act that referenced her motion for leave to amend complaint, the court will not begrudge plaintiff the opportunity to state a claim for relief.

[2] "A deferral state is one in which state law prohibits discrimination in employment and a state agency has been established to grant or seek relief for such discriminatory practice. *Clark v. Resistoflex Co.,* 854 F.2d 762, 765 n. 1 (5th Cir.1988). The Louisiana Commission on Human Rights has been funded and operating since April 1994, making Louisiana a deferral state since that time. La. R.S. § 51:2233; G. Guidry, *Employment Discrimination Claims in Louisiana,* 45

the Title VII plaintiff must file a charge of discrimination with the EEOC within 30 days after receiving notice that the state or local agency has terminated proceedings or within 300 days of the alleged discriminatory employment action, whichever is earlier. 42 U.S.C. § 2000e-5(e)(1); *Burrell v. Brown,* 2000 WL 1056312, *3 (5th Cir. 2000) (unpubl.); *Janmeja v. Board of Supervisors of Louisiana State University,* 96 Fed. Appx. 212, 214, 2004 WL 902304 (5th Cir. 2004). Once the plaintiff has exhausted administrative remedies by presenting her claim to the EEOC and receiving a right to sue letter, she must file suit in federal court within 90 days of receipt of the EEOC's notice of the right to sue. 42 U.S.C. § 2000e-5(f)(1). The failure to exhaust administrative remedies or to file suit in federal court in a timely manner renders the Title VII case subject to dismissal. *See Hoffman v. Boeing*, 596 F.2d 683, 685 (5th Cir. 1979).

Bradford alleged that on October 28, 2017, she filed a charge with the EEOC alleging discrimination on the basis of "her race, and color." (Amend. Compl., ¶ 25).[3] However, she neither alleged, nor argued that she presented a claim for gender-based discrimination to the EEOC. Moreover, there is no indication that a claim for gender discrimination reasonably could have "grown" out of her charge for race-based discrimination. *See McClain v. Lufkin Indus., Inc.*, 519 F.3d 264, 273 (5th Cir.2008); *Anderson v. City of Dallas*, 116 Fed. Appx. 19, 25 (5th Cir.2004). Accordingly, the undersigned concludes that plaintiff's Title VII claim for gender-based discrimination is subject to dismissal for failure to exhaust EEOC remedies.

Plaintiff's apparent failure to file an EEOC claim regarding gender discrimination also potentially impacts her ability to prosecute a gender discrimination claim under the LEDL. The

---

La. B.J. 240, 241 (Oct.1997); G. Huffman, *The Louisiana Commission on Human Rights--Now It's for Real,* Briefly Speaking, Spring 1995, at 4 (New Orleans Bar Ass'n)." *Singleton v. RPM Pizza, Inc.,* 2004 WL 2216530, *3, n.1 (E.D. La. 2004).

[3] She received her Right to Sue letter on August 1, 2018. *Id.*, ¶ 26.

LEDL contains a one year prescriptive period that begins to run from the date of the alleged discriminatory act (termination, in this case), which is suspended for up to six months during the pendency of an administrative review or investigation by the EEOC "of the claim" at issue. *Walton-Lentz v. Innophos, Inc.*, 476 Fed. Appx. 566, 571 (5th Cir.2012) *O'Neal v. Cargill, Inc.*, No. 15-7183, 2016 WL 1437873, at *6 (E.D. La. Apr. 12, 2016) (citations omitted); La. R.S. § 23:303(D).[4]

Bradford filed the instant suit on October 23, 2018. The JPHSD asserted in its brief, without citation to the complaint or any evidence, that plaintiff's employment was terminated on or about September 26, 2017 – more than one year before she filed suit. However, neither the complaint, nor the amended complaint allege when plaintiff was discharged. Accordingly, the court cannot conclude that the complaint was filed more than one year after her discharge from employment so as to thwart her LEDL gender discrimination claim from relating back to the filing of her original complaint. *See* Fed.R.Civ.P. 12(c).

The JPHSD further contends that plaintiff's LEDL gender discrimination claim is subject to dismissal because she failed to satisfy the LEDL's pre-suit notice requirement. Before filing a suit for relief under the LEDL, an employee first must provide her employer with 30 days advance written notice of the alleged discriminatory conduct, and both parties must make a good faith effort to resolve the dispute. *Plaisance v. Airgas-Gulf States, Inc.*, 2008 WL 1730535 (E.D. La. Apr. 10, 2008) (citing La. R.S. 23:303(C)). Failure to do so renders a suit premature and subject to dismissal. *Plaisance, supra* (citations omitted). Nevertheless, some courts have held that the filing of an EEOC charge may provide the written notice required by Section 23:303(C).

---

[4] Suspension, however, is appropriate only as to the claim investigated by the EEOC or to a claim that reasonably could have "grown" out of the charge. *See Walton-Lentz, supra*.

*Id*. (citations omitted).⁵ Here, however, plaintiff alleged that her EEOC charge was limited to race discrimination. Accordingly, the EEOC charge cannot serve as notice of the gender discrimination claim.

Nonetheless, it is plausible that plaintiff did provide pre-suit notice of her gender discrimination claim to the JPHSD. In its brief, the JPHSD stated that "[u]pon information and belief, Plaintiff provided no such notice." (Def. Opp to M/Leave to Amend, pg. 7 [doc. # 31]). However, the JPHSD did not adduce any evidence to support the foregoing statement – nor could it within the confines of a Rule 12(b)(6) motion.⁶ Moreover, the JPHSD neither argued, nor established that an allegation regarding pre-suit notice is a pleading requirement whose absence from the complaint may be construed against plaintiff.⁷ Therefore, the court cannot conclude that plaintiff's gender discrimination claim under the LEDL is premature.⁸

    *3)*    *42 U.S.C. §§ 1981 and 1983*

By its terms, § 1981 provides that,

(a) Statement of equal rights
All persons within the jurisdiction of the United States shall have the same right

---

⁵ If the EEOC finds reasonable cause that the charge is true, it is required to pursue conciliation efforts with the employer. *See* 42 U.S.C. § 2000e-5(b).

⁶ The JPHSD opposed plaintiff's LEDL gender discrimination on the basis of futility, which is analyzed under the Rule 12(b)(6) standard.

⁷ In fact, plaintiff's complaint need not even set forth the elements of a prima facie case of discrimination. *Jones v. Bock*, 549 U.S. 199, 213; 127 S.Ct. 910, 919 (2007) (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 122 S.Ct. 992 (2002)).

⁸ The court notes that plaintiff failed to respond to many of defendant(s)' arguments, including this one. However, the court cannot grant a motion to dismiss solely because the plaintiff failed to oppose the motion. *Webb v. Morella*, 457 Fed. Appx. 448, 452 (5th Cir.2012) (citation omitted). On the other hand, if plaintiff agrees that her gender discrimination claim under the LEDL is untimely or that she failed to provide requisite pre-suit notice, then she may voluntarily dismiss the claim.

>in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.
>
>>(b) "Make and enforce contracts" defined
>>For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.
>
>42 U.S.C. § 1981(a)-(b).

To prevail on a § 1981 claim, the plaintiff must show that "(1) he or she is a member of a racial[9] minority; (2) the defendant had an intent to discriminate on the basis of race; and (3) the discrimination concerned one or more of the activities enumerated in the statute . . . ." *Bellows v. Amoco Oil Co.*, 118 F.3d 268, 274 (5th Cir.1997) (citation omitted).

Section 1981, however, does not provide a separate cause of action against local government entities. *Oden v. Oktibbeha Cty., Miss.*, 246 F.3d 458, 462 (5th Cir.2001) (citing *Jett v. Dallas Independent School District*, 491 U.S. 701, 731, 109 S.Ct. 2702 (1989)). Instead, violations of civil rights under § 1981 must be asserted against state actors under § 1983. *Id*.

The JPHSD is a hospital service district created by the Jackson Parish Police Jury pursuant to Louisiana Revised Statute § 46:1051-1053. As such, the JPHSD is a body corporate in law with all the powers of a corporation, perpetual existence, and the power and right to incur debts, contract obligations, to sue and be sued, and to perform any and all acts in its corporate capacity and its corporate name necessary for carrying out the purposes for which the hospital service district was created. La. R. S. § 46:1060. The JPHSD also is a political subdivision of

---

[9] It is well settled that 42 U.S.C. § 1981(a) does not provide a remedy for gender-based discrimination. *Kimble v. Georgia Pac. Corp.*, 245 F. Supp.2d 862, 866 (M.D. La.2002), aff'd, 67 Fed. Appx. 248 (5th Cir.2003) (citations omitted).

the state. La. R.S. § 46:1064. Therefore, the JPHSD is a "person" or "municipality" subject to 42 U.S.C. § 1983. *See Hampton Co. Nat. Sur., LLC v. Tunica Cnty., Miss.*, 543 F.3d 221, 224 (5th Cir. 2008) (local government unit such as a county is a "municipality" under § 1983); *Frazier v. Bd. of Trustees of Nw. Mississippi Reg'l Med. Ctr.*, 765 F.2d 1278, 1284 (5th Cir. 1985) (county hospital, is a "person" to whom § 1983 applies).

In sum, because the JPHSD is a state actor, plaintiff's civil rights claims under § 1981 must be asserted under § 1983. *Id*. Here, however, Bradford did not assert her § 1981 claim against the JPHSD via § 1983. *See* Amend. Compl. Even if she had, however, a municipality or local government entity is liable under § 1983 and/or § 1981 via § 1983[10] only for acts directly attributable to it "through some official action or imprimatur." *Valle v. City of Houston*, 613 F.3d 536, 541-42 (5th Cir. 2010) (citing *Piotrowski v. City of Houston,* 237 F.3d 567, 578 (5th Cir.2001)). Therefore, to establish municipal liability under § 1983, a plaintiff must show the deprivation of a federally protected right caused by action taken "pursuant to an official municipal policy." *Id*. (citing *Monell*, 436 U.S. at 691, 98 S.Ct. 2018). That is, a plaintiff ordinarily must identify: "(1) an official policy (or custom), of which (2) a policymaker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose 'moving force' is that policy or custom." *Id*. (citations omitted).

Bradford advanced no argument to establish that her amended complaint satisfied the foregoing requirements for municipal liability. In addition, the court discerns no such facts on the face of her amended complaint. Accordingly, Bradford fails to state claim for relief against the JPHSD under §§ 1981 and 1983. *See Jones, supra*.

---

[10] *See Jones v. City of Houston*, 756 Fed. Appx. 341, 346 (5th Cir.2018)

*4) Punitive and Exemplary Damages*

The JPHSD contends that plaintiff's theories of recovery do not afford her a punitive or exemplary damages remedy. The court agrees. Title VII plaintiffs may not recover punitive damages against governments, government agencies, and political subdivisions. *Oden, supra* (citations omitted). Also, punitive damages are not authorized under the Equal Pay Act. *Aucoin v. Kennedy*, 355 F. Supp.2d 830, 841 (E.D. La.2004) (citations omitted); *Guest-White v. Checker Leasing, Inc.*, No. 14-0172, 2016 WL 595407, at *6 (N.D. Miss. Feb. 11, 2016). Although plaintiff failed to state a claim for relief under 42 U.S.C. §§ 1981 and 1983, *see* discussion, *supra*, even if she had, punitive damages are not available under those provisions against a municipality/local government entity. *Knox v. City of Monroe*, No. 07-606, 2009 WL 936965, at *1 (W.D. La. Apr. 6, 2009) (citations omitted).

Finally, exemplary damages are not allowable under Louisiana law unless expressly provided for by statute. *Albert v. Farm Bureau Insurance Company*, 940 So. 2d 620, 622 (La. 2006). "In the absence of such a specific statutory provision, only compensatory damages may be recovered." *Evans v. Vill. of Creola*, No. 18-0983, 2019 WL 639174, at *4 (W.D. La. Jan. 22, 2019), R&R adopted, 2019 WL 639162 (W.D. La. Feb. 14, 2019). Here, the LEDL only provides for "compensatory damages, back pay, benefits, reinstatement, or if appropriate, front pay, reasonable attorney fees, and court costs." La. R. S. § 23:303(A). Accordingly, exemplary damages are not available, and thus, subject to dismissal.

c) <u>Inquiseek's Motion to Dismiss</u>

Inquiseek seeks dismissal of plaintiff's claims for tortious interference with contract, intentional infliction of emotional distress, and for punitive damages. The court will address each in turn.

*1)    Tortious Interference with Contract*

The Louisiana Supreme Court has adopted "a very narrow cause of action for tortious interference with contracts." *American Waste & Pollution Control Co. v. Browning-Ferris, Inc.*, 949 F.2d 1384, 1386 (5th Cir. 1991) (citing *9 to 5 Fashions, Inc. v. Spurney*, 538 So.2d 228 (La. 1989)). In *9 to 5 Fashions*, the Louisiana Supreme Court recognized "only a corporate officer's duty to refrain from intentional and unjustified interference with *the contractual relation between his employer and a third person* and disavowed any intention to adopt whole and undigested the fully expanded common law doctrine of interference with contract." *Huffmaster v. Exxon Co.*, 170 F.3d 499, 504 (5th Cir.1999) (emphasis added). The elements of such a claim include:

> (1) the existence of a contract or a legally protected interest between the plaintiff and the corporation; (2) the corporate officer's knowledge of the contract; (3) the officer's intentional inducement or causation of the corporation to breach the contract or his intentional rendition of its performance impossible or more burdensome; (4) absence of justification on the part of the officer; (5) causation of damages to the plaintiff by the breach of contract or difficulty of its performance brought about by the officer.

*Sierra v. Halliburton Energy Servs., Inc.*, No. 17-1002, 2018 WL 3763130, at *5 (W.D. La. Aug. 8, 2018).

Bradford alleges in her complaint, as amended, that Jeff Harper, an Inquiseek consultant, intentionally set her up for failure, and thereby interfered with her contractual rights. (Amend. Compl., ¶¶ 12, 16). In her opposition brief, however, she stated that she had a contract with the JPHSD, not Inquiseek, and seemed to suggest that her claim was against some unspecified officer of the corporation that employed her, which presumably would be the JPHSD. *See* Pl. Opp. Memo. [doc. # 25].

Insofar as plaintiff is pivoting to assert a tortious interference with contract claim against an unknown corporate officer of the JPHSD, the court observes that Louisiana limits a claim for tortious interference with contract to cases against officers of *private* corporations. *Progressive*

15

*Waste Solutions of La, Inc. v. Lafayette Consol. Gov't*, Civ. Action No. 12-0851, 2015 WL 222396, at *9 (W.D. La. Jan. 14, 2015), *affirmed* 2015 WL 6500430 (5th Cir. Oct. 28, 2015); *City of Alexandria v. Cleco Corp.*, 735 F. Supp. 2d 448, 463 (W.D. La. 2010). Of course, the JPHSD is a political subdivision of the state - not a private corporation. *See* La. R. S. § 46:1064; *Bertrand v. Sandoz*, 260 La. 239, 255 So. 2d 754 (La. 1971).

It is equally clear that plaintiff does not have a viable tortious interference with contract claim against Inquiseek. First, she admitted that she does not have a contract with Inquiseek. Second, she did not identify any specific, as opposed to general, duty owed her by Inquiseek. Finally, the proper defendant for a tortious interference with contract claim is the officer of the corporation who interfered with the contract between plaintiff and the same corporation with whom the officer is employed. The allegations in plaintiff's complaint simply do not track the limited avenue of relief recognized by *9 to 5 Fashions*, and thus, do not set forth a valid claim for tortious interference with contract. *See Chinook USA, LLC v. Duck Commander Inc.*, No. 16-0113, 2017 WL 1731728, at *9 (W.D. La. May 2, 2017).

    2)    *Intentional Infliction of Emotional Distress*

In defining conduct which is prohibited by the tort of intentional infliction of emotional distress ("IIED"), the Supreme Court stated that,

> [t]he conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community. Liability does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. Persons must necessarily be expected to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind. Not every verbal encounter may be converted into a tort; on the contrary, some safety valve must be left through which irascible tempers may blow off relatively harmless steam . . .

16

*White v. Monsanto, Co.*, 585 So.2d 1205, 1209 (La. 1991) (citations omitted).

Further, "[c]onduct which is merely tortious or illegal does not rise to the level of being extreme and outrageous for purposes of the tort of intentional infliction of emotional distress." *Schmidt v. Cal-Dive Int'l, Inc.*, 240 F. Supp.3d 532, 552 (W.D. La.2017) (*citing Nicholas v. Allstate Ins. Co.*, 765 So.2d 1017, 1024-25 (La. 2000)).

> In this case, Bradford alleged that,
>
> Jeff Harper, acting under the authority of Defendant Inquiseek, constantly criticized and chastised Plaintiff's job methodology and work practices, which were part of the protocols established by her predecessors and or the current CEO, John Morgan.
>
> Jeff Harper was verbally abusive to Plaintiff and insisted that she adopt protocols that were inappropriate for the hospital's needs; and threatened that her noncompliance with his orders would result in her termination of employment, and did result in the firing of Plaintiff.

(Amend. Compl., ¶¶ 13-14).

Upon review, it is manifest that the foregoing allegations do not suffice to confer a plausible IIED claim. *See Jenkins v. Louisiana Workforce Comm'n*, 713 Fed. Appx. 242, 246 (5th Cir.2017) (IIED claim dismissed on 12(b)(6) motion where the employee alleged her supervisory authority was undermined, that she was passed over for a promotion, and her supervisors discussed an "inappropriate case note" with her); *Deus v. Allstate Ins. Co.*, 15 F.3d 506, 515 (5th Cir.1994) (no actionable IIED claim where an employer calls upon an employee to do more work than other employees, uses special reviews on a particular employee and not on others to downgrade her performance, and institutes long-range company plans to replace the employee); *Nicholas v. Allstate Ins. Co.*, 765 So.2d 1017, 1028 (La. 2000) (employer's arbitrary and compassionless decision to single employee out from his peers for corrective review does not support IIED claim).

*3)   Punitive and Exemplary Damages*

As discussed above, punitive/exemplary damages are not allowable under Louisiana law unless expressly provided for by statute. *Albert, supra*. Bradford did not identify any authority to support a claim for punitive/exemplary damages against Inquiseek. Accordingly, dismissal of her claim for punitive/exemplary damages is warranted.

## Conclusion

For the foregoing reasons,

IT IS ORDERED that plaintiff's motion for leave to amend complaint [doc. # 28] is GRANTED.[11]

IT IS RECOMMENDED that the Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted [doc. # 13] filed by defendant, Jackson Parish Hospital Service District No. 1 ("JPHSD"), be GRANTED-IN-PART, and that plaintiff's claims under 42 U.S.C. §§ 1981 and 1983, for Title VII gender discrimination, and for punitive/exemplary damages be DISMISSED, with prejudice.

IT IS FURTHER RECOMMENDED that the JPHSD's motion to dismiss [doc. # 13] otherwise be DENIED.

IT IS FURTHER RECOMMENDED that the Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted [doc. # 14] filed by defendant, Inquiseek, L.L.C., be GRANTED, and that plaintiff's claims for tortious interference with contract,

---

[11] As this motion is not excepted in 28 U.S.C. § 636(b)(1)(A), nor dispositive of any claim on the merits within the meaning of Rule 72 of the Federal Rules of Civil Procedure, this ruling is issued under the authority thereof, and in accordance with the standing order of this court. Any appeal must be made to the district judge in accordance with Rule 72(a) and L.R. 74.1(W).

intentional infliction of emotional distress, and for punitive/exemplary damages be DISMISSED, with prejudice.

Under the provisions of 28 U.S.C. §636(b)(1)(C) and F.R.C.P. Rule 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

In Chambers, at Monroe, Louisiana, this 17th day of April 2019.

KAREN L. HAYES
UNITED STATES MAGISTRATE JUDGE