UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| CORA BRADFORD | CIVIL ACTION NO. 3:18-cv-01376 |
| VERSUS | JUDGE TERRY A. DOUGHTY |
| JACKSON PARISH POLICE JURY, ET AL. | MAG. JUDGE KAREN L. HAYES |

RULING

Pending before the Court is a Motion for Partial Summary Judgment on Plaintiff's Title VII and State Law Race Discrimination Claims [Doc. No. 51] filed by Defendant Jackson Parish Hospital Service District No. 1 d/b/a Jackson Parish Hospital ("the Hospital"). The Hospital moves for summary judgment dismissing Plaintiff Cora Bradford's ("Bradford") remaining race discrimination claims under Title VII and state law.

On October 31, 2019, Bradford filed a Memorandum in Opposition to the Motion for Partial Summary Judgment [Doc. No. 55].

On November 7, 2019, the Hospital filed a Reply Memorandum in support of its Motion for Partial Summary Judgment [Doc. No. 56].

For the following reasons, the Hospital's Motion for Partial Summary Judgment is GRANTED, and Bradford's race discrimination claims are DISMISSED WITH PREJUDICE.

I.     FACTS

Bradford, a black female, was first employed by the Hospital on December 1, 2015, as an accountant.

At the time Bradford was hired, the Hospital's Chief Financial Officer ("CFO") was Eric Cripps ("Cripps"), a white male. Cripps was originally hired as an accountant in September 2008

and promoted to business team leader in January 2011. He resigned on September 21, 2012, but returned to work at the hospital on February 1, 2013. On May 4, 2015, Cripps was promoted to CFO, with a salary of $90,000.00. Cripps continued to serve as CFO until December 14, 2015, when he began serving as both the CFO and the Chief Operating Officer ("COO"). Cripps was supervised by then-Chief Executive Officer ("CEO") Bobby Jordan. Cripps resigned on September 22, 2016.

On or about October 14, 2016, Bradford, who has an MBA, was promoted to CFO after Cripps' resignation. She was promoted by interim CEO Tim Page [Doc. No. 51-3, Exh. A, Bradford Depo., p. 2] and then supervised by CEO John Morgan.

As CFO, Bradford was in charge of revenue cycle, accounts payable, payroll, medical records, and financial reporting. She had the duties of ensuring internal controls were adequate, safeguarding facility assets, preparing an annual budget, monitoring banking activities, overseeing the maintenance of inventory and fixed assets, enhancing and developing policies and procedures to improve the operation and effectiveness of the Hospital, presenting financial information to the Board of Directors, and scheduling and coordinating with the external auditor and state agencies.

The Hospital terminated Bradford on September 26, 2017, for alleged poor job performance. The Hospital has submitted affidavits and evidence to show that Bradford paid bills late, failed to consistently fund the Hospital retirement plan, failed to reconcile bank statements for six (6) months, lacked knowledge regarding $1.6 million in the Hospital's bank account, failed to submit IRS form 941s, and failed to collect significant un-billed amounts owed to the Hospital.

Bradford does not deny the facts presented by the Hospital, but contends that Cripps left the Hospital in a poor financial condition, that he also failed to pay bills timely, that there were accounting errors under Cripp's leadership, and that the Hospital had an inefficient method of

approving invoices (requiring approval of department heads). She cites to the Legislative Auditors findings of error in the amount of $24,000, on March 29, 2017, which dated back to fiscal year 2016, and which Bradford contends, were based on records compiled while Cripps was CFO. Bradford further contends that she was treated less favorably because Cripps had been given one year to remedy the financial problems, but that she was terminated. Additionally, she alleges that she was treated less favorably than Savannah Maxwell, a white female, in that Maxwell was allowed to transfer to another position.

On or about October 28, 2017, Bradford filed a charge with the Equal Employment Opportunity Commission ("EEOC"), alleging that the Hospital discriminated against her on the basis of race and color. [Doc. No. 34, ¶ 25]. The EEOC issued Bradford a Dismissal and Notice of Rights on August 1, 2018. [Doc. No. 34, ¶ 26].

On October 23, 2018, Bradford filed her original Complaint in this Court against the Hospital and Inquiseek, LLC ("Inquiseek"), a consulting firm hired by the Hospital to evaluate its accounting functions. In her original Complaint, Bradford alleged wrongful termination, disparate treatment, and wage disparity in violation of Title VII of the Civil Rights Act of 1964, 42 USC § 2000e, *et seq.* ("Title VII"); 42 U.S.C. §§ 1981 & 1983; the Equal Pay Act of 1963 ("the Equal Pay Act"), 29 U.S.C. §206, an amendment to the Fair Labor Standards Act ("FLSA"), 29 USC § 201; and the Louisiana Employment Discrimination Law ("LEDL"), LA. REV. STAT. § 23:332. *See* [Doc. No. 1, ¶¶ 17-19]. Additionally, she asserted state tort claims against Inquiseek based on alleged verbal abuse and threats by its agent, Jeff Harper. She sought lost wages and benefits; liquidated, exemplary, and punitive damages; attorneys' fees, interests, and costs; and an injunction enjoining Defendants from engaging in the alleged discrimination and requiring them to take affirmative actions to redress their discriminatory practices.

On November 12, 2018, the Jackson Parish Police Jury and the Hospital filed an Answer to the Complaint in which they clarified that they had been improperly named in the Complaint as a single entity (the "Jackson Parish Police Jury d/b/a Jackson Parish Hospital"), effectively substituting themselves as Defendants. [Doc. No. 5]. On November 13, 2018, Inquiseek filed its answer. [Doc. No. 6].

On January 15, 2019, all three Defendants filed motions to dismiss. The Police Jury moved to dismiss the claims against it because it was neither Bradford's employer, nor took any of the challenged actions. [Doc. No. 11]. Bradford filed a statement of no opposition to this motion. [Doc. Nos. 22 & 23]. The Court granted the motion, and all claims against the Police Jury were dismissed. [Doc. No. 24].

Inquiseek also filed a motion to dismiss Bradford's claims for tortious interference with contract, intentional infliction of emotional distress, and for punitive damages. [Doc. No. 14]. Bradford filed an opposition [Doc. No. 25], and Inquseek filed its reply [Doc. No. 30].

The Hospital filed a motion to dismiss seeking dismissal of Bradford's claims against it under Sections 1981 and 1983, the Equal Pay Act, and for punitive damages. [Doc. Nos. 13 & 13-1]. Bradford did not timely oppose the motion.

However, on February 6, 2019, Bradford sought leave of court to file an Amended Complaint. [Doc. No. 28]. Bradford sought to add claims for gender discrimination under Title VII, Sections 1981 and 1983, the Equal Pay Act, and LA. REV. STAT. § 23:332. [Doc. No. 28-1, ¶¶ 17-19]. The Hospital opposed Bradford's Motion to Amend [Doc. No. 31], contending that amendment was futile because all claims other than under the Equal Pay Act were time-barred.

On April 17, 2019, the Magistrate Judge issued a Report and Recommendation in which she granted Bradford's Motion to Amend Complaint, adding claims for gender discrimination

4

under Title VII, Sections 1981 and 1983, the Equal Pay Act, and LA. REV. STAT. § 23:332. [Doc. No. 32]. However, she "fold[ed] the [Hospital's] arguments regarding futility into the court's discussion of the already pending motion(s) to dismiss." *Id.* at p. 5.

The Magistrate Judge then addressed the motions to dismiss. The Magistrate Judge recommended that the Court grant Iquiseek's motion to dismiss and dismiss Bradford's claims for tortious interference with contract, intentional infliction of emotional distress, and for punitive/exemplary damages. The Magistrate Judge further recommended that the Hospital's motion to dismiss be granted in part and denied in part. She recommended that the Court grant the motion as to Bradford's claims under §§ 1981 and 1983, for Title VII gender discrimination, and for punitive damages, but otherwise denied.

On May 2, 2019, this Court issued a Judgment adopting the Magistrate Judge's Report and Recommendation, dismissing the claims against Inquiseek with prejudice. [Doc. No. 37]. As a result of the Court's rulings, only the Hospital remains a Defendant in this matter. The Court further granted the Hospital's Motion to Dismiss in part, dismissing Bradford's Sections 1981 and 1983, Title VII gender discrimination, and punitive damage claims. [Doc. No. 37].

On June 24, 2019, the Hospital filed its first Motion for Partial Summary Judgment seeking dismissal of Bradford's state-law gender discrimination claims on the grounds that (1) the claims are prescribed and (2) Bradford failed to comply with the notice requirements of La. Rev. Stat. 23:303. [Doc. No. 39]. On June 28, 2019, Bradford filed a Motion to Dismiss the Hospital's Motion for Partial Summary Judgment [Doc. No. 41]. On July 1, 2019, the Hospital filed a Reply Memorandum in support of its Motion for Partial Summary Judgment [Doc. No. 42].

On July 23, 2019, the Court issued a Ruling [Doc. No. 45] and Judgment [Doc. No. 46] granting the Hospital's Motion for Partial Summary Judgment and dismissing Bradford's state-law gender discrimination claims with prejudice on the basis of prescription. The Court construed Bradford's Motion to Dismiss as a motion to strike and denied that motion.

On September 9, 2019, the Hospital filed a second Motion for Partial Summary Judgment seeking summary judgment on Bradford's wage discrimination claims. [Doc. No. 47]. On September 30, 2019, Bradford filed an opposition memorandum [Doc. No. 49]. On October 4, 2019, the Hospital filed a reply memorandum. [Doc. No. 50].

On October 10, 2019, the Hospital followed up with the instant Motion for Partial Summary Judgment on Bradford's Title VII and State Law Race Discrimination Claims [Doc. No. 51].

On October 23, 2019, the Court issued a Ruling and Judgment [Doc. Nos. 53 & 54] granting the Hospital's Motion for Partial Summary Judgment on Bradford's wage discrimination claims and dismissing those claims with prejudice.

Bradford's race-based claims against the Hospital for wrongful termination and disparate treatment under Title VII and the LEDL remain pending and are the subject of the instant motion. On October 31, 2019, Bradford filed an opposition to the Hospital's Motion for Partial Summary Judgment. [Doc. No. 55]. On November 7, 2019, the Hospital filed a reply memorandum in support of its motion. [Doc. No. 56].

The motion is fully briefed, and the Court is now prepared to rule.

## II. LAW AND ANALYSIS

### A. Standard of Review for Summary Judgment

Summary judgment "shall [be] grant[ed] . . . if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. *Anderson v. Liberty Lobby*, Inc., 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id*.

If the moving party can meet the initial burden, the burden then shifts to the nonmoving party to establish the existence of a genuine issue of material fact for trial. *Norman v. Apache Corp.*, 19 F.3d 1017, 1023 (5th Cir. 1994). The nonmoving party must show more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In evaluating the evidence tendered by the parties, the Court must accept the evidence of the nonmovant as credible and draw all justifiable inferences in its favor. *Anderson*, 477 U.S. at 255.

### B. Race Discrimination Claims

Title VII prohibits employers from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin. 42 U.S.C. § 2000e–2(a). Likewise, the Louisiana Employment Discrimination Law ("LEDL") provides: "It shall be unlawful discrimination in employment for an employer to . . . discharge any individual, or otherwise to intentionally discriminate against any individual with respect to compensation, or terms, conditions, or privileges of employment, because of the individual's race, color, religion, sex, or national origin."

LA. STAT. § 23:332. Claims under the LEDL are "essentially identical, analytically, to Title VII." *Bustamento v. Tucker,* 607 So.2d 532, 538 n. 6 (La. 1992). Therefore, the Court applies the same analysis to Bradford's Title VII and state law race discrimination claims.

Pursuant to *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), when a plaintiff relies on circumstantial evidence of discrimination, courts employ the traditional burden-shifting framework. First, the plaintiff must establish a prima facie case by showing that (1) she is a member of a protected class, (2) she is qualified for the position at issue, (3) she was subject to an adverse employment action, and (4) she was replaced by someone outside the protected class or that similarly situated individuals outside the protected class were treated more favorably. *See Okoye v. Univ. of Tex. Houston Health Sci. Ctr.*, 245 F.3d 507, 512-13 (5th Cir. 2001) (internal quotation marks and citations omitted).

If the plaintiff establishes a prima facie case, the burden shifts to the defendant to provide a "legitimate, nondiscriminatory reason" for the adverse action. *Id.* at 512. "However, the burden on the defendant at this stage is one of production, not persuasion." *Keller v. Coastal Bend Coll.*, 629 F. App'x 596, 601 (5th Cir. 2015), as revised (Mar. 22, 2016) (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000)).

Finally, if the defendant meets its burden of production, then the burden shifts back to the plaintiff. "To carry this burden, the plaintiff must produce substantial evidence indicating that the proffered legitimate nondiscriminatory reason is a pretext for discrimination." *Laxton v. Gap, Inc.*, 333 F.3d 572, 578 (5th Cir. 2003) (citing *Reeves*, 530 U.S. at 143). "A plaintiff may establish pretext either through evidence of disparate treatment or by showing that the employer's proffered

8

explanation is false or unworthy of credence." *Id.* (citing *Reeves*, 530 U.S. at 143) (other citations and internal quotation marks omitted).[1]

### 1. *Prima Facie* Case

The Hospital concedes for purposes of summary judgment that Bradford is a member of a protected class, that she was qualified for her former position as CFO, and that she was terminated. However, the Hospital contends that Bradford cannot make out a *prima facie* case because she admits that her discrimination claims are based solely on her belief that she was terminated because of her race.

Bradford opposes the Hospital's motion, arguing that she has presented sufficient evidence to raise a genuine issue of material fact for trial. In addition to the first three elements, Bradford contends that she can make out the fourth element because the Hospital treated her differently from Cripps, who is white. She argues that many of the problems attributed to her were based on Cripps' performance, but that he was treated more favorably because he was given one year to remedy to financial problems that "originated before 2014 under his tenure." [Doc. No. 55, p. 2]. She also contends that another Hospital employee, Savannah Maxwell, who is white, was treated more favorably because she was allowed to transfer to another position.

> To satisfy the fourth element of the prima facie case as argued, [a plaintiff] was required to demonstrate that "he was treated less favorably because of his membership in that protected class than were other similarly situated employees who were not members of the protected class, under nearly identical circumstances." *Lee [v. Kansas City Southern Ry.Co*, 574 F.3d [253, 259 (5th Cir. (2009)]. "The employment actions being compared will be deemed to have been taken under nearly identical circumstances when the employees being compared held the same job or responsibilities, shared the same supervisor or had their

---

[1] A plaintiff may also establish a "mixed-motive" case by showing that the defendant's reason for the contested employment action, while true, is only one of the reasons for its conduct and another motivating factor is race. *See Machinchick v. PB Power, Inc.*, 398 F.3d 345, 351-52 (5th Cir. 2005). While the Hospital cited this law in its motion, Bradford has not argued or otherwise indicated that she is attempting to proceed under a mixed-motive analysis. Therefore, the Court's analysis is limited to pretext. The Court would note, however, that Bradford has not presented evidence of mixed motive either.

9

employment status determined by the same person, and have essentially comparable violation histories." *Id.* at 260 (footnotes omitted). On the other hand, "[e]mployees with different supervisors, who work for different divisions of a company or ... who have different work responsibilities ... are not similarly situated." *Id.* at 259–60. Significantly, if a difference between the plaintiff and the proposed comparator "accounts for the difference in treatment received from the employer, the employees are not similarly situated for the purposes of an employment discrimination analysis." Id. at 260 (internal quotation marks omitted); *see also Black v. Pan Am. Labs., L.L.C.*, 646 F.3d 254, 262 (5th Cir. 2011).

*Heggemeier v. Caldwell Cty., Texas*, 826 F.3d 861, 868 (5th Cir. 2016)

In this case, Bradford raises two comparators: Maxwell and Cripps. She makes no argument comparing herself to Maxwell, but does attach Maxwell's deposition. In that deposition, Maxwell testified that she was employed by Human Resources and was supervised by Phillip Thomas and later by Tenniel Stewart and then Bradford herself to a certain extent. [Doc. No. 55-2, Exh. A, Maxwell Depo., p. 16]. Maxwell testified that she resigned her employment as Interim Human Resources Manager, but that CEO John Morgan had offered her a position as a registration clerk. *Id.* at p. 28. Based on these facts, Bradford has failed to make a *prima facie* showing that she and Maxwell were similarly situated.

Second, Bradford compares herself to Cripps and argues, in essence, that the same problems were present with his performance and that she inherited some of the problems from him, but he was given a year in the position to correct problems, and she was not. However, as the Court found in its previous ruling, Bradford and Cripps were not similarly situated. Although they both served as CFO, Cripps took on the second role of COO during his tenure at the request of the then-CEO Jordan. Bradford, on the other hand, was promoted by interim CEO Page and was supervised by CEO Morgan at the time of her termination.

Under these circumstances, the Court finds that Bradford has failed to establish a *prima facie* case of discrimination, and the Hospital is entitled to summary judgment on her remaining claims.

2.      **Pretext**

Even assuming *arguendo* that Bradford established a *prima facie* case, the Hospital has met its burden of production to show legitimate, non-discriminatory reasons for her termination by producing extensive documentation to support her termination for poor performance. The burden then shifts to Bradford to produce a genuine issue of material fact for trial that the Hospital's reasons were false or pretext for discrimination.

Bradford fails to meet this burden as well. Bradford does not deny or dispute the evidence presented by the Hospital and thus does not attempt to show that her termination was for a "false" reason.

Instead, Bradford points to the Hospital's alleged disparate treatment of her when compared to former white employees Maxwell and Cripps. The Court has found that these two former employees are not proper comparators, and the Court finds no further analysis as to Maxwell is necessary. The Court recognizes that Cripps did serve solely as CFO, as did Bradford, during part of his tenure, and there were financial problems based on the evidence. However, ultimately, at least according to Bradford, the Hospital terminated Cripps for the poor performance. At best, Bradford contends that she has shown pretext because the hospital fired Cripps sixteen months after he was promoted to CFO and nine months after he began serving in the dual role of COO and CFO, but fired her after only eleven months. This evidence is insufficient to show pretext when the facts, circumstances, and supervisors were all different.

Additionally, Bradford admitted in her deposition that she does not "have any facts, other than how I feel" to show that she was subject to discrimination. [Doc. No. 51-3, Exh. A, Bradford Depo., p. 134].

Ultimately, Bradford does not deny the reasons advanced by the Hospital for her termination, but contends that she should have been given more time to rectify the issues because she had inherited some of the problems and some were the result of poor policies. That may or may not be the case, but "it is not our place to second-guess the business decisions of an employer, so long as those decisions are not the result of discrimination." *Jackson v. Watkins*, 619 F.3d 463, 468 n.5 (5th Cir. 2010). The Court does not sit as a "super-personnel department" to review the wisdom of employer's decisions, so long as those decisions are not discriminatory. *See, e.g., Davenport v. Northrop Grumman Sys. Corp.*, 281 Fed. App'x. 585, 588 (7th Cir. 2008); *Riser v. Target Corp.*, 458 F.3d 817, 821 (8th Cir. 2006) (internal citation omitted) ("While [employee] may have some concerns about [employer's] management style, he does not have a Title VII claim.... ' [T]he employment-discrimination laws have not vested in the federal courts the authority to sit as super-personnel departments reviewing the wisdom or fairness of the business judgments made by employers, except to the extent that those judgments involve intentional discrimination.'").

Under the evidence presented, the Hospital's Motion for Partial Summary Judgment on her race discrimination claims under Title VII and the LEDL is GRANTED.

### III. CONCLUSION

Based on the foregoing, the Hospital's Motion for Partial Summary Judgment [Doc. No. 51] is GRANTED, and Bradford's race discrimination claims under Title VII and the LEDL are DISMISSED WITH PREJUDICE.

MONROE, LOUISIANA, this 20th day of December, 2019.

                                                                    TERRY A. DOUGHTY
                                          UNITED STATES DISTRICT JUDGE